**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 10-1869**

———————

INFECTION CONTROL CONSULTATION SERVICES, INCORPORATED,

Plaintiff – Appellant,

v.

SMITHKLINE BEECHAM CORPORATION, d/b/a GlaxoSmithKline,

Defendant – Appellee,

and

MARY C. GOSWEILER,

Defendant.

———————

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Roger W. Titus, District Judge. (8:09-cv-00059-RWT)

———————

Argued: December 8, 2011          Decided: January 17, 2012

———————

Before GREGORY and SHEDD, Circuit Judges, and Richard M. GERGEL, United States District Judge for the District of South Carolina, sitting by designation.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** Nicholas Hantzes, HANTZES & REITER, McLean, Virginia, for Appellant.  Michael Evan Blumenfeld, MILES & STOCKBRIDGE, PC, Baltimore, Maryland, for Appellee.  **ON BRIEF:** Michael A.

Brown, Todd M. Reinecker, Timothy M. Hurley, MILES & STOCKBRIDGE, PC, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Infection Control Consultation Services, Inc. ("ICCSI") appeals the district court's grant of summary judgment in favor of Smithkline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK") on ICCSI's claims under Maryland law for tortious interference, unfair competition, and breach of contract. For the following reasons, we affirm.

I.

In 2005, the Substance Abuse and Mental Health Services Administration ("SAMHSA") issued a Request for Proposal ("RFP") for a pilot program (the Project) aimed at distributing and tracking a hepatitis vaccine, Twinrix, to nationwide treatment centers. SAMHSA eventually awarded the contract to ICCSI, a Maryland corporation certified as a minority small business under § 8(a) of the Small Business Act. GSK, a multinational pharmaceutical company, is the sole manufacturer of Twinrix.[1]

The Project ran through October 11, 2006, with ICCSI successfully shipping all 43,950 doses of vaccine. SAMHSA then obtained funding for a new program to continue the goals of the

---

[1] Prior to submitting the RFP, SAMHSA investigated the possibility of GSK operating the program. GSK informed SAMHSA, however, that, while it was willing to provide the vaccine for the program, it did not provide the tracking and other services SAMHSA envisioned under the program.

Project.  This second program was classified as an "Indefinite Delivery/Indefinite Quantity" ("IDIQ") program, and the eventual RFP for the program was limited to IDIQ-approved contractors.[2] It is undisputed that ICCSI was not an IDIQ contractor and never applied to be an IDIQ contractor.  SAMHSA ultimately awarded the contract for the second program to DB Consulting Group, Inc., a minority-owned IDIQ contractor.

In response, ICCSI filed this action against GSK in Maryland state court alleging claims (as relevant here) for common law unfair competition, intentional interference with economic opportunity, and breach of contract.  ICCSI also stated a claim for breach of contract against Mary Gosweiler, a former ICCSI employee.  ICCSI dismissed the claim against Gosweiler with prejudice, creating complete diversity of citizenship, and GSK promptly removed the case to federal court.  Following discovery, GSK moved for summary judgment, and the district court granted that motion from the bench.

## II.

On appeal, ICCSI argues that the district court erred in granting summary judgment in favor of GSK on its claims.  We

---

[2] Approximately 90% of all SAMHSA's programs are submitted to IDIQ contractors.

review the district court's grant of summary judgment to GSK de novo, "viewing the facts in the light most favorable to, and drawing all reasonable inferences in favor of" ICCSI. EEOC v. Central Wholesalers, Inc., 573 F.3d 167, 174 (4th Cir. 2009) (internal quotation marks omitted). Summary judgment is appropriate "if 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)). We review each of ICCSI's arguments in turn.

A.

ICCSI first contests the district court's grant of summary judgment on its tortious interference claim.[3] To state a claim for tortious interference with a prospective business advantage under Maryland law, a plaintiff must show intentional and willful acts that are: calculated to damage the plaintiff's lawful business, done with unlawful purpose and malice, and cause actual damage and loss. Natural Design, Inc., v. Rouse Co., 485 A.2d 663, 675 (Md. 1984). The district court concluded

---

[3] ICCSI also alleged a claim for tortious interference with an existing business relationship. Because GSK did not induce SAMHSA to breach an existing contract with ICCSI, the district court correctly granted summary judgment on this claim. See Blondell v. Littlepage, 968 A.2d 678, 696 (Md. Ct. Spec. App. 2009) (noting claim requires proof of an existing contract and a breach of that contract).

5

that ICCSI failed to show that any improper actions caused ICCSI damages, and we agree. Simply put, ICCSI was not qualified to bid on the second contract and never even applied to bid for it.[4] It was ICCSI's own actions—not any allegedly improper acts by GSK—that caused its failure to gain a prospective business advantage.

In order to avoid this conclusion, ICCSI contends that SAMSHA's decision to use the IDIQ contracting process for the second program resulted from pressure from GSK. Again, however, even assuming GSK engaged in improper acts aimed to harm ICCSI, GSK put forth deposition testimony from Susan Pearlman, SAMHSA's Director of Contract Management, and Robert Lubran, SAMHSA's Director of Pharmacologic Therapies, that the decision to proceed with an IDIQ RFP was made independently of anything done or said by GSK.[5]

In sum, the district court correctly granted summary judgment on this claim because ICCSI failed to show that GSK prevented it from gaining the contract for the second program.

---

[4] ICCSI asserts that it was promised the follow-on contract assuming the Project was completely successfully. It put forth no evidence supporting this claim, however, and the district court correctly rejected it.

[5] ICCSI attacked the credibility of these two witnesses but has failed to provide any evidence beyond speculation to rebut their testimony. Moreover, there was nothing unique or unusual about using the IDIQ process for the second program.

Instead, the undisputed evidence is that ICCSI never even bid (or was eligible to bid) on that contract and that SAMHSA was not influenced by GSK when it made the decision to proceed with an IDIQ RFP.[6]

B.

ICCSI also alleges that the district court erred in granting summary judgment on its breach of contract claim. According to ICCSI, it was the third-party beneficiary of a contract between SAMHSA and GSK to purchase Twinrix. The district court granted summary judgment to GSK on this claim after concluding that any alleged contract violated the statute of frauds and that ICCSI failed to show that GSK and SAMHSA ever entered into a contract or a contract intended to benefit a third-party.

GSK offers its vaccines at several different price points depending on the status of the purchaser. In 2005, Andrew Maine, a SAMHSA contract specialist working on the Project, contacted GSK to discuss pricing and supply options for Twinrix. A GSK employee, Robert Turner, emailed Maine on May 9, 2005, to confirm that SAMHSA, as a federal agency, was eligible to purchase Twinrix at the Federal Supply Schedule price. The

---

[6] This conclusion that ICCSI failed to show causation also forecloses its unfair competition claim and summary judgment on that claim was thus appropriate.

email specified that, if SAMHSA purchased the vaccine through an outside company or contractor, the price might vary depending on "the contract the organization is able to access." (J.A. 164). The following month, SAMHSA officially requested a quote from GSK for the supply and distribution of Twinrix to 60 sites nationwide. On June 30, 2005, GSK informed SAMHSA that it could supply Twinrix at the Federal Supply Schedule price, but that GSK was unable to perform the other tasks required for the Project. This information ultimately led SAMHSA to hire a primary contractor (ICCSI) for the Project.

Based on these interactions, ICCSI alleges that GSK entered into a contract to sell Twinrix at the Federal Supply Schedule price to whomever eventually operated the program for SAMHSA and that GSK breached this contract by eventually selling Twinrix to ICCSI at a higher price. The difficulty with this allegation is that both SAMHSA and GSK denied that they had a contractual relationship, and we agree that the parties' exchanges do not form a contract for an indefinite quantity of Twinrix at the Federal Supply Schedule price. ICCS has also failed to produce any additional record evidence in support of its argument that SAMHSA and GSK entered into such an agreement. Maine and Turner both gave deposition testimony that no contract existed between GSK and SAMHSA, testimony that was affirmed by SAMHSA's chief contracting officer, Pearlman.

Accordingly, because ICCSI failed to show that a contract existed between GSK and SAMHSA, the district court correctly granted summary judgment on this clam.[7]

## III.

For the foregoing reasons, we affirm the district court's grants of summary judgment to GSK.

AFFIRMED

---

[7] Because we conclude that no contract existed between SAMHSA and GSK, we do not reach the district court's alternate rationales for granting summary judgment on this claim—that any contract violated the statute of frauds and that any contract did not clearly benefit a third-party.