4

# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Heard Construction, Inc.

   v.

Waterfront Marine Construction Co.,
Infrastructure Constructors, Inc.,
Infrastructure and Industrial
Constructors USA, L.L.C.,
Infrastructure and Industrial
Constructors USA Holdings, Inc.,
Warren Clem Sutton, a.k.a. Ken Sutton,
John Randolph Sutton, a.k.a. Randy Sutton,
John Doe 1-10,
and John Doe Entity 1-10

March 9, 2015

Case No. (Civil) CL14-2757

BY JUDGE TIMOTHY S. WRIGHT

Defendants Waterfront Marine Construction, Inc. (Waterfront), Infrastructure Constructors, Inc. (ICI), Infrastructure and Industrial Constructors USA, L.L.C (IIC), Infrastructure and Industrial Constructors USA Holdings, Inc. (I+ICON), Ken Sutton, and Randy Sutton filed a demurrer and plea in bar to Counts I through III of the complaint. Count I alleges tortious interference with business expectancy against all defendants; Count II alleges business conspiracy pursuant to Va. Code §§ 18.2-499, 18.2-500 against Waterfront, ICI, IIC, and I+ICON; and Count III alleges business conspiracy pursuant to Va. Code §§ 18.2-499, 18.2-500 against Waterfront, Ken Sutton, and Randy Sutton.

*Statement of Facts*

In 2012, the Department of the Navy requested bids for a civil engineering and construction project with a contract value of $4.5 million. The plaintiff submitted a bid for the contract as a HUBZone small business, entitled to certain bidding preferences, in September 2012. Defendant Waterfront submitted a bid for the contract around the same time, claiming that it qualified as a small business. However, it is alleged at the time of Waterfront's bid that it had been acquired by ICI, a subsidiary of IIC, which was in turn a subsidiary of I+ICON. Waterfront was awarded the contract. The plaintiff alleges that Waterfront did not qualify as a small business, and, had Waterfront not falsely claimed to be a small business, the plaintiff would have been awarded the contract pursuant to federal regulation.

The plaintiff filed a protest regarding Waterfront's size with the contracting officer, alleging that Waterfront had been acquired by a larger business and was not qualified as a small business for purposes of bidding on the contract. The U.S. Small Business Administration thereafter issued a formal size determination that Waterfront was entitled to small business status on the basis of statements by its officers that Waterfront had not been acquired by a larger concern. The plaintiff appealed this determination, and the SBA found that Waterfront had been acquired by ICI on September 25, 2012, the same day Waterfront submitted its bid for the contract. The SBA issued a revised size determination on May 23, 2014, finding that Waterfront was too large to have been duly awarded the contract. However, in the interim, Waterfront had completed all work on the contract and had collected payment for the project.

*Plea in Bar*

In analyzing a plea in bar, this Court applies the well-settled law of the Commonwealth, which provides that such a plea "asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Hawthorne v. VanMarter,* 279 Va. 566, 577 (2010). The moving party bears the burden of proving this single factual issue, and may introduce evidence in support of the plea. *E.g., Cooper Indus., Inc. v. Melendes,* 260 Va. 578, 594 (2000). *See generally Upper Occoquan Sewage Auth. v. Blake Constr. Co.,* 266 Va. 582 (2003).

The defendants argue that all counts of the plaintiff's complaint are barred because the plaintiff never possessed a valid business expectancy in the contract. Although the complaint alleges that but for Waterfront's claim of small business status, the plaintiff would have been awarded the contract, the bid abstract attached to the defendants' plea in bar demonstrates that the plaintiff was not the runner-up in the bid process, regardless of the bid calculation method used.

The plaintiff counters that its memorandum in opposition to the plea in bar demonstrates the proper application of the price evaluation preferences under the Federal Acquisition Regulation, and establishes that, but for Waterfront's misrepresentation, Heard would have been awarded the contract.

For the successful pleading of a tortious interference claim, Virginia law requires more than a mere "belief and hope" that a business relationship would have resulted, but for the defendant's interference. *See, e.g., Commercial Roofing & Sheet-Metal Co. v. Gardner Eng'g, Inc.,* 60 Va. Cir. 384, 387 (Fairfax Cnty. 2002). Absent status as the runner-up for the relevant contract, the plaintiff cannot demonstrate any reasonable expectancy.

In the case at bar, the evidence presented establishes that, had Waterfront not improperly submitted its bid as a small business, Heard would have been awarded the contract.

The HUBZone price evaluation preference regulations provide in relevant part:

> (b) The contracting officer shall give offers from HUBZone small business concerns a price evaluation preference by adding a factor of 10 percent to all offers, except:
> (1) Offers from HUBZone small business concerns that have not waived the evaluation preference; or
> (2) Otherwise successful offers from small business concerns.

48 C.F.R. § 19.1307.

> The offers submitted for the subject contract are as follows:

| | |
|---|---|
| C & D Construction (listed as small business) | $3,995,958[1] |
| Waterfront Marine (incorrectly listed as small business) | $4,439,000 |
| PreCon Marine (listed as small business) | $4,649,340 |
| Heard Construction (listed as HUBZone business) | $4,702,084 |

> Applying the plain language of the regulation, PreCon Marine would not have been "otherwise successful," as Waterfront had the lowest offer, regardless of size. The 10% factor is, therefore, added to the Waterfront and PreCon offers, leaving Heard with the lowest bid:

| | |
|---|---|
| Waterfront Marine (large business) | $4,882,900 |
| PreCon Marine (small business) | $5,114,274 |

---

[1] This bid was subsequently withdrawn.

| | |
|---|---|
| Heard Construction (HUBZone business) | $4,702,084 |

*See id.*; SBA Procedural Notice No. 8000-583 (Nov. 4, 2002).
The Court, therefore, denies the defendants' plea in bar.

### *Demurrer; Standard of Review*

"A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Glazebrook v. Board of Supervisors of Spotsylvania Cnty.*, 266 Va. 550, 554 (2003). A demurrer "admits the truth of the facts contained in the pleading to which it is addressed, as well as any facts that may be reasonably and fairly implied and inferred from those allegations. A demurrer does not, however, admit the correctness of the pleader's conclusions of law." *Harris v. Kreutzer*, 271 Va. 188, 195 (2006); *see also Taboada v. Daly Seven, Inc.*, 271 Va. 313, 317 (2006).

To survive a challenge by demurrer, a "pleading must be made with 'sufficient definiteness to enable the court to find the existence of a legal basis for its judgment'." *Eagle Harbor, L.L.C. v. Isle of Wight Cnty.*, 271 Va. 603, 611 (2006) (quoting *Moore v. Jefferson Hosp., Inc.*, 208 Va. 438, 440 (1967)). Rule 1:4(d) states: "Every pleading shall state the facts on which the party relies in numbered paragraphs, and it shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense." A complaint must plead "sufficient facts to constitute a foundation in law for the judgment sought, and not merely conclusions of law. . . ." *Kitchen v. City of Newport News*, 275 Va. 378, 387–88 (2008) (quoting *Hubbard v. Dresser, Inc.*, 271 Va. 117, 122 (2006)). "[I]t is unnecessary for the pleader to descend into statements giving details of proof in order to withstand demurrer." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993) (citing *Hunter v. Burroughs*, 123 Va. 113, 129 (1918)).

A trial court is "not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a [Complaint], but only may determine whether the factual allegations of the [Complaint] are sufficient to state a cause of action." *Harris*, 271 Va. at 195–96 (quoting *Riverview Farm Assocs. Va. Gen. P'ship v. Board of Supervisors*, 259 Va. 419, 427 (2000)); *accord Almy v. Grisham*, 273 Va. 68, 76 (2007) ("[A] demurrer presents an issue of law, not an issue of fact.").

### *Demurrer to Count I: Tortious Interference*

In Count I, the plaintiff alleges that it had an expectancy to be awarded the contract, and that the defendants' knowing and false representations regarding the size of Waterfront caused the plaintiff to suffer damages in losing the contract and attendant future opportunities.

To state a claim for tortious interference with a business expectancy sufficient to survive demurrer, a plaintiff must plead: (1) the existence

of a valid business expectancy; (2) that the defendant had knowledge of the business expectancy; (3) intentional interference with the business expectancy by the defendant; (4) the use of improper means or methods to effectuate such interference; and (5) resulting damages. *E.g., Dunlap v. Cottman Transmission Sys., L.L.C.*, 287 Va. 207, 216 (2014).

The defendant argues that, in a sealed bid situation, such as that present in the instant case, no bidding party has a contract expectancy or knowledge of another bidder's contract expectancy at the time of the bid. The contract expectancy must be specific; because not even the government knew which party would submit the lowest bid, the defendants maintain that the plaintiff's contract expectancy was purely speculative.

Scarce authority exists from Virginia courts regarding whether a party submitting a sealed bid for a government contract has a cognizable contract expectancy. *See Commercial Roofing and Sheet Metal Co., Inc.*, 60 Va. Cir. at 387 (holding that plaintiff's expectation of being allowed to bid on a project did not equate to a reasonable expectation of further contractual relations). However, it is clear that "[a] plaintiff must demonstrate not only that it has a fair chance to win the contract, but that it is likely to win the contract." *Patriot Contract Svcs., L.L.C. v. American Overseas Marine Corp.*, 2006 U.S. Dist. LEXIS 98575, at *36 (E.D. Va. 2006) (emphasis in original).

In the instant case, however, the plaintiff does not allege such a remote expectancy in a contract. Rather, the plaintiff alleges that, but for the defendant's fraudulent conduct, the plaintiff would have been awarded the subject contract. *See Advanced Power Sys., Inc. v. Hi-Tech Systems, Inc.*, 801 F. Supp. 1450, 1459–60 (E.D. Pa. 1992) ("[T]he averment of a rigged bidding process sufficiently establishes a reasonable likelihood or probability that an anticipated business arrangement would have been consummated absent APS's interference.") (internal quotation marks and citation omitted); *cf. Infection Control Consultation Servs. v. SmithKline Beecham Corp.*, 461 Fed. Appx. 343, 345 (4th Cir. 2012) (unpublished) ("ICCSI was not qualified to bid on the second contract and never even applied to bid for it. It was ICCSI's own actions — not any allegedly improper acts by GSK — that caused its failure to gain a prospective business advantage.").

The defendants rely on *GTSI Corp. v. Wildflower International, Inc.*, an unpublished decision from the United States District Court for the Eastern District of Virginia. 2009 U.S. Dist. LEXIS 61537 (E.D. Va. 2009). In that case, the plaintiff alleged that the defendants tortiously interfered with some subset of 1,428 contracts on which the plaintiff bid by impermissibly associating with other companies in contravention of the small business bidder requirements. *Id.* at *22–23. The court held that the defendants were not on notice regarding the business expectancies with which they were supposed to have tortiously interfered: "[T]here are 1,428 contracts

that Wildflower bid on during a certain time period. Some sub-set of those contracts was bid on by FirstSource Businesses improperly affiliated with GTSI. Some sub-set of those contracts was won by the improperly-affiliated company. For some sub-set of those contracts, Wildflower was the runner-up bidder. And for some sub-set of those contracts, Wildflower was reasonably certain to have won had the improper competition not occurred. This is a far cry from pleading the specific expectancies with which GTSI interfered." *Id.* The court further held that the plaintiffs failed to plausibly allege that the defendant knew about the specific expectancies at issue: "It is unclear how, in a multi-party bidding situation, GTSI could have known which contracts Wildflower had an expectancy in before they were awarded by the Government." *Id.* at *23.

*Wildflower* is on point, but distinguishable. In the instant case, it is alleged ("but for") that the plaintiff was the runner-up for a specific contract that the defendant was awarded due to fraudulent conduct. To hold that the plaintiff requires greater specificity in alleging a business expectancy would preclude any claim in such instances and leave the plaintiff without recourse under state law.

As for the argument regarding the defendant's knowledge of the specific expectancy, at the demurrer stage, all allegations of the complaint must be accepted as true. In *Commercial Bus. Sys. v. Halifax*, 253 Va. 292, 301 (1997), the Supreme Court of Virginia found no objective expectancy in a renewal contract where the plaintiff was the incumbent contractor and was told by the solicitor that renewal would not be a problem, but was subsequently not allowed to bid. *Id.* at 296, 298. However, that matter was tried before a jury, and there was no evidence presented beyond "merely a subjective belief or hope that the business relationship would continue and merely a possibility that future economic benefit would accrue to [plaintiff]." *Id.* at 303. *See, e.g., W. S. Carnes, Inc. v. Board of Supervisors*, 252 Va. 377, 384 (1996) ("The facts admitted on demurrer are those expressly alleged in the motion for judgment, those which fairly can be viewed as impliedly alleged, and those which can be reasonably inferred from the facts alleged.").

The instant case presents a different scenario in which the defendants' knowledge of the bid and the sole contract at issue distinguish the above-cited authorities. Accordingly, the Court finds, taking the allegations of the complaint as true, as we must at this stage, that the demurrer to Count I is properly overruled.

### Demurrer to Count II: Business Conspiracy

The plaintiff alleges in Count II that defendants I+ICON, IIC, ICI, and Waterfront conspired to submit Waterfront's "false and improper bid" for the contract in violation of the business conspiracy statute, Va. Code § 18.2-499. Accordingly, the plaintiff seeks recovery under Va. Code § 18.2-500.

10

The complaint further alleges that the Sutton defendants sold Waterfront to I+ICON on September 25, 2013, the day Waterfront submitted its bid.

"To recover in an action for conspiracy to harm a business, the plaintiff must prove (1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business, and (2) resulting damage to plaintiff." *Allen Realty Corp. v. Holbert*, 227 Va. 441, 499 (1984).

The defendant argues that Counts II and III fail because as a matter of law, a corporation cannot conspire with itself or its own agents.

It is well-established that a corporation cannot conspire with itself. *See, e.g., Bowman v. State Bank*, 229 Va. 534, 541 (1985) ("[T]here must be two persons to comprise a conspiracy, and a corporation, like an individual, cannot conspire with itself."). Furthermore, a corporation cannot conspire with its own agents when they are acting within the scope of their corporate duties. *E.g., Kebaish v. Inova Health Case Servs.*, 85 Va. Cir. 92, 100 (Fairfax Cnty. 2012) ("A corporation acts only through its agents. Because the individual defendants were acting as agents of Inova, they cannot be liable for interfering with their principal's contract with Dr. Kebaish.").

The complaint alleges that: (1) ICI is the "majority or sole owner of Waterfront"; (2) IIC is the "majority or sole owner of ICI"; and (3) I+ICON is the "majority or sole owner of IIC." Accordingly, there can be no conspiracy between these entities, as, at a minimum, the lesser entities are partially-owned agents of the greater entities. Likewise, the Sutton defendants, as owners of the entity, could not conspire with Waterfront. However, given the timeframe, and relationships alleged, reading the complaint in the light most favorable to the plaintiff, a conspiracy between Waterfront and the entities that purchased it is sufficiently alleged.

The defendants' contention that the complaint fails to allege conspiracy due to a lack of legal malice in interfering with the plaintiff's business expectancy necessarily rises or falls with the disposition of Count I. *See supra*.

However, "a conspiracy claim, made under Virginia Code §§ 18.2-499 and 18.2-500, is inadequate unless it sets forth some core facts to support the claim." *Mutual Funding, Inc. v. Collins*, 62 Va. Cir. 34, 39 (Fairfax Cnty. 2012). The instant complaint most specifically alleges that the defendants had knowledge of the plaintiff's bid for the contract, and that the defendants "agreed, and acted in concert to go forward with Waterfront's improper bid for the specific purpose of interfering with Heard's perspective award of the contract." The instant complaint contains no particular allegations regarding the alleged conspiracy, and the demurrer is, therefore, sustained with leave to amend in this regard. *See Government Emps. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) ("[B]usiness conspiracy, like fraud, must be pleaded with particularity and with more than 'mere conclusory language.' The heightened pleading standard prevents every business dispute over unfair competition becoming a business conspiracy claim."

(quoting *Bay Tobacco, L.L.C. v. Bell Quality Tobacco Products, L.L.C.,* 261 F. Supp. 2d 483, 499 (E.D. Va. 2003))).

*Demurrer to Count III: Business Conspiracy*

The plaintiff alleges in Count III that defendants Ken Sutton, Randy Sutton, and Waterfront conspired to submit Waterfront's "false and improper bid" for the contract in violation of Va. Code § 18.2-499. Accordingly, the plaintiff seeks recovery under Va. Code § 18.2-500.

The defendants maintain that, pursuant to the allegations of the complaint, Ken Sutton and Randy Sutton were shareholders and officers of Waterfront Marine and, accordingly, could not have conspired with their corporate entity before submission of the bid. *See, e.g., Kebaish,* 85 Va. Cir. at 100. The Court, therefore, sustains the demurrer to Count III with prejudice.